IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ANDREW IRASENA, individually and on behalf of all others similarly situated; KAYONA LANGSTON, individually and on behalf of all others similarly situated; CHAUNCEY DURHAM, individually and on behalf of all others similarly situated; JAMUSON SCOTT, individually and on behalf of all others similarly situated; BRITTANY GOODWIN, individually and on behalf of all others  similarly situated; BARBARA BLACKFORD, individually and on behalf of all others similarly situated; JAMES MAYERS, individually and on behalf of all others similarly situated; JAMES FEAZELL, individually and on behalf of all others similarly situated; HALEY O'BRIEN, individually and on behalf of all others similarly situated; HEATHER MCKNIGHT, individually and on behalf of all others similarly situated; SHAQUILLE FIELDS, individually and on behalf of all others similarly situated; BRANDY MITCHELL, individually and on behalf of all others similarly situated; BRIA TUCKER, individually and on behalf of all others similarly situated; JARED BROWNER, individually and on behalf of all others similarly situated; BRANDUN BRADSHAW, individually and on behalf of all others  similarly situated; and AMANDA KING, individually and on behalf of all others similarly situated                                                                                          PLAINTIFFS

v.                                             No. 4:15CV00038 JLH

CHALAK M&M AR1 LLC; CHALAK M&M AR2
LLC; CHALAK M&M LLC; and DINO NITHIANANDAN                          DEFENDANTS

**OPINION AND ORDER**

This is a collective action brought by former employees of the Genghis Grill restaurant in Little Rock, Arkansas, against their employer for violations of the Fair Labor Standards Act. The plaintiffs allege that Genghis Grill mandated an invalid tip-pooling arrangement and failed to pay minimum wage for time spent performing non-tip-producing duties. The defendants have filed motions to compel arbitration with plaintiffs Brandy Mitchell, Amanda King, and Chauncey Durham. For the reasons explained below, the motions are granted.

**I.**

In 2014, Genghis Grill instituted a new policy that required newly hired employees to complete their personnel paperwork online. That paperwork included an arbitration agreement. The arbitration agreement contained a paragraph that provides, in pertinent part:

> 6. *Costs of Arbitration:* Genghis Grill will pay all costs unique to arbitration (as compared to the costs of adjudicating the same claims before a court or agency), including the regular and customary arbitration fees and expenses. . . . Each party shall pay its own attorneys' fees and any costs that are not unique to the arbitration (i.e., costs that each party would incur if the claim(s) were litigated in a court or agency such as costs to subpoena witnesses and/or documents; take depositions and purchase deposition transcripts; copy documents; etc.). Any dispute as to whether a cost is unique to arbitration shall be resolved by the arbitrator. The arbitrator may award reasonable fees and costs or any portion thereof to the prevailing party to the same extent a court or agency would be entitled to do so, in accordance with applicable law.

Document #27-1 at 8. The arbitration agreement also contains a provision with the following language:

> 8. *Modification:* This Agreement may be modified or terminated only by a writing accepted by Employee and signed by a senior officer of Genghis Grill, or by Genghis Grill after 30 days' written notice to Employee. Any modification or termination of this Agreement shall be prospective only and shall not apply to any claims or disputes that are pending in arbitration or that have been initiated by either party pursuant to this Agreement prior to the expiration of the 30-day period.

*Id.* Finally, the agreement contains a forum selection clause, which states that any arbitration hearing will be held in Dallas, Texas. *Id.* at 7.

In March 2014, King began working for Genghis Grill. King was issued a unique user name and password to access Genghis Grill's electronic portal. On March 24, 2014, King logged on to the electronic portal, established her electronic signature, and consented to use the portal to review and execute documents. King then indicated her acceptance of the arbitration agreement by clicking

check boxes next to each numbered paragraph and signing her electronic signature at the end of the document.[1]

In May 2014 Durham began working at Genghis Grill. Durham was issued a unique user name and password to the electronic portal. On May 23, 2014, Durham executed the arbitration agreement by means of the electronic portal in the same manner just described.[2]

Other current and former Genghis Grill employees brought suit against Genghis Grill for minimum wage violations under the Fair Labor Standards Act. *See Swaney v. M&M Mongolian LLC*, Case No. 4:14-CV-0110 JLH. By October 2014, all defendants in that action accepted Genghis Grill's offer of judgment. Shortly thereafter, Genghis Grill also required its then-current employees to complete the arbitration agreement within one week.

In November 2014, Mitchell, who began working at Genghis Grill in August 2011, was issued a unique user name and password. On November 4, 2014, she logged on to the electronic portal and executed the arbitration agreement.[3]

On January 15, 2015, the plaintiffs brought this action.

---

[1] Although King states in her declaration that she did not know that the electronic paperwork contained an arbitration agreement, Genghis Grill has provided King's electronically signed and dated copy of the agreement. *See* Document #32-1 at 9-13.

[2] Although Durham states in his declaration that he does not recall receiving a user name or password, Genghis Grill has provided Durham's electronically signed and dated copy of the agreement. *See* Document #32-1 at 14-18.

[3] Mitchell states in her declaration that she was required to generate passwords for other employees and to fill out their electronic paperwork without their knowledge or consent. However, there is no evidence to indicate that Mitchell filled out paperwork for either King or Durham. To the contrary, both King's and Durham's paperwork had been completed months prior to Mitchell's dealings with the paperwork, which took place in November 2014.

**II.**

Genghis Grill seeks to compel the plaintiffs to arbitrate their claims as outlined in the arbitration agreement.

> A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999). If the other party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists. *Id.*; TEX. CIV. PRAC. & REM. CODE § 171.021. The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding). If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Oakwood,* 987 S.W.2d at 573.

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (alteration in original).[4] Here, the plaintiffs do not dispute that their claims come within the scope of the arbitration agreement, nor do they argue that they did not execute the agreement. However, the plaintiffs do seek to block enforcement of the arbitration agreement, arguing that it is illusory and that enforcement would be unconscionable. Hence, the plaintiffs bear the burden of proving that the agreement is unenforceable.

The plaintiffs contend that Genghis Grill retains the exclusive right to unilaterally modify or terminate the arbitration agreement after 30 days' notice and that the agreement does not contain a savings clause like that approved in *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002). They contend that the savings clause here differs from that in *Haliburton* because it allows Genghis Grill to modify or terminate the agreement with respect to claims of which it has actual knowledge but for which arbitration has not been initiated. The plaintiffs further contend that, if Genghis Grill

---

[4] The parties do not dispute that this action is governed by the Federal Arbitration Act and the laws of the State of Texas.

desired to bring suit against an employee, nothing in the arbitration agreement would prevent it from giving notice of termination of the agreement and then bringing suit against him or her after 30 days.

In *Halliburton*, the Texas Supreme Court found that the employer's promises in a binding arbitration agreement were not rendered illusory by its amendment/modification provision because it included a savings clause stating that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment" and that "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id.* at 569-70 (alteration in original). Texas courts have extended *Halliburton* by upholding arbitration agreements that allow the employer to amend or terminate the agreement except with respect to disputes in which the arbitration process has already been initiated. *See Nabors Drilling USA, LP v. Pena*, 385 S.W.3d 103, 107-09 (Tex. App. 2012) (holding that an arbitration agreement was enforceable where the inability to modify or terminate was "limited to disputes where arbitration has been initiated."); *In re Champion Technologies, Inc.*, 222 S.W.3d 127, 132 (Tex. App. 2006) (enforcing an arbitration agreement where the savings clause allowed the employer to amend or terminate the agreement except in case of a dispute for which arbitration has already been initiated). Furthermore, "[s]ince *Halliburton,* the Supreme Court has consistently held that when an arbitration agreement contains a savings clause that makes any amendment or termination operate prospectively only, it is not an illusory agreement." *Nabors Drilling*, 385 S.W.3d at 107.

Here, the savings clause expressly states that "[a]ny modification or termination of this Agreement shall be prospective only" and that no modification or termination shall apply to claims or disputes that have been initiated within 30 days of the employer's written notice to the employee. These provisions do not give Genghis Grill "the unilateral, unrestricted right to terminate the

arbitration agreement." *See J.M. Davidson, Inc.*, 128 S.W.3d at 230 n.2. Therefore, it is not an illusory agreement.

The plaintiffs next argue that the agreement is unconscionable for various reasons. Arbitration agreements are favored under both federal and Texas law. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010).

> Unconscionable contracts, however—whether relating to arbitration or not—are unenforceable under Texas law. A contract is unenforceable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *FirstMerit Bank,* 52 S.W.3d at 757; *see also In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex. 2002) ("[S]ubstantive unconscionability . . . refers to the fairness of the arbitration provision itself."). Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided. *See* Dan B. Dobbs, 2 Law of Remedies 703, 706 (2d ed. 1993); *see also* Restatement (Second) of Contractss [sic] § 208, cmt. a (1979) ("The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose, and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy.").

*In re Poly-America, L.P.*, 262 S.W.3d 337, 348-49 (Tex. 2008). Furthermore, "[a]n arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate his statutory rights.'" *Id.* at 349 (citing *Halliburton,* 80 S.W.3d at 572).

The plaintiffs first argue that the agreement is unconscionable because it includes a forum selection clause that requires them to bring their claims in Dallas, Texas. They contend that the agreement requires the plaintiffs to travel a long distance to arbitrate their claims in Dallas, that this favors Genghis Grill because it has corporate offices there, and that it makes little sense to arbitrate

6

there because this action is brought by Arkansas plaintiffs with respect to events occurring at Genghis Grill's restaurant in Arkansas. As the plaintiffs argue, every witness and piece of documentary evidence in the proceeding would relate to the Little Rock, Arkansas restaurant. Furthermore, they maintain that any witnesses in the case would be outside of the subpoena power of a Dallas arbitrator, thus making it more difficult for them to present their claims.

Genghis Grill replies, arguing that in *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010), the Texas Supreme Court enforced a forum selection clause in an arbitration agreement where the distance between the plaintiff's residence and the chosen forum was far greater than here. Furthermore, Genghis Grill argues, the agreement provides a method for the plaintiffs to ask the arbitrator to shift that cost to the defendants if they can show that it is a cost unique to arbitration.

Contrary to Genghis Grill's argument, the court in *Odyssey Healthcare* concluded that "nothing in the agreement requires the arbitration to occur in Dallas." *Id.* Rather, it found that "[t]he agreement simply provide[d] that (absent agreement otherwise) the arbitrator must be selected from a Dallas panel of arbitrators." *Id.* Furthermore, the agreement in that case contained a provision that empowered the arbitrator to modify the terms of the agreement if arbitration in Dallas would result in substantial expense to the plaintiff. *Id.* at 422-23.

The agreement here has no similar provision. It is true that the agreement contains a provision that allows the arbitrator to shift to Genghis Grill the plaintiffs' "costs unique to arbitration." However, the agreement defines "costs that are not unique to the arbitration" as "costs that each party would incur if the claim(s) were litigated in a court or agency such as costs to subpoena witnesses and/or documents; take depositions and purchase deposition transcripts; copy

documents; etc." It is by no means obvious that an arbitrator would find that travel costs or costs pertaining to witnesses or evidence fall under this definition.[5]

As to the subpoena power, Genghis Grill replies that the arbitrator would have the authority to subpoena witnesses under the Federal Arbitration Act, and that, in any case, Federal Rule of Civil Procedure 45(c) places geographical limits on a federal district court's power to subpoena witnesses as well.

Genghis Grill is correct that the Federal Arbitration Act provides that an arbitrator "may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7; *cf. Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 382, 122 S. Ct. 2151, 2168, 153 L. Ed. 2d 375 (2002) ("Arbitrators . . . are often invested with many powers over the dispute and the parties, including the power to subpoena witnesses and administer oaths, *e.g.*, Federal Arbitration Act, 9 U.S.C. § 7 . . . .").

The plaintiffs cite *Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 36 Cal. Rptr. 3d 229 (2005), for the proposition that an arbitration agreement can be rendered unconscionable by unreasonable geographical barriers. However, *Aral* held that "a forum selection clause that requires a consumer to travel 2,000 miles to recover a small sum is not reasonable." *Id.* at 561, 36 Cal Rptr. 3d at 241. That case is not persuasive here because the distance between Little Rock, Arkansas, and Dallas, Texas, is a fraction of that distance.

King and Durham state in their declarations that they simply could not afford to travel to Dallas to arbitrate. To the extent that the plaintiffs mean to claim unconscionability based on

---

[5] That this is a definition is indicated by the contract's use of "i.e." instead of "e.g." in the parenthetical language.

8

substantial costs associated with arbitrating in Dallas, they have failed to show sufficient evidence of costs. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (holding that the party opposing arbitration must prove a likelihood of incurring substantial costs by presenting specific information of future costs); *Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 206 (Tex. App. 2015) ("Other than Rhine's conclusory assertions that he might incur substantial costs and expenses if all parties and witnesses are located outside of New York and if he fails to prevail, there is no record evidence showing what the costs would be or that those costs would consume his potential recovery."). Therefore, the plaintiffs have failed to carry their burden of showing that the forum selection clause is unconscionable.

The plaintiffs' second argument for finding the agreement unconscionable is that it forces them to forego substantive rights and remedies afforded by the Fair Labor Standards Act. The plaintiffs argue that the arbitration agreement undermines the remedial purpose of the Fair Labor Standards Act, which is designed to allow low-wage earners to pool resources in order to share costs to bring claims against their employers. Furthermore, they contend that, under the agreement, they lose the statutory right to maintain an action in federal or state court as well as the right to mandatory attorney's fees that are awarded to prevailing plaintiffs under the Act. *See* 29 U.S.C. § 216(b) (providing that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

Genghis Grill replies that FLSA claims are subject to arbitration and that collective action waivers are enforceable under the law. Furthermore, Genghis Grill argues that the agreement provides that "the arbitrator may award reasonable fees and costs or any portion thereof to the prevailing party to the same extent a court or agency would be entitled to do so, in accordance with

applicable law." As such, they argue, this provision empowers the arbitrator with the same ability to award fees as a court would have under the FLSA.

Here also the plaintiffs fail to carry their burden of showing that the arbitration agreement is unconscionable. Claims brought under the Fair Labor Standards Act may be compelled to arbitration. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). Furthermore, the plaintiffs' inability to proceed collectively in arbitration does not deprive them of substantive rights under the FLSA. *Id.* at 298. It is true that, unlike the Fair Labor Standards Act, the agreement here provides that "[e]ach party shall pay its own attorneys' fees" and allows only that "[t]he arbitrator *may* award reasonable fees and costs or any portion thereof to the prevailing party to the same extent a court or agency would be entitled to do so, in accordance with applicable law" (emphasis added). Nevertheless, "if Plaintiffs prevail and the arbitrator fails to award the fees, in contravention of the FLSA to that extent, the arbitration award can be vacated either at the district court or circuit level." *Carter v. Countrywide Credit Indus., Inc.*, 189 F. Supp. 2d 606, 619 (N.D. Tex. 2002); *see also Walker v. Countrywide Credit Indus., Inc.*, Case No. CIV.A.3:03-CV-0684-N, 2004 WL 246406, at *8 (N.D. Tex. Jan. 15, 2004). "[T]he judicial review of arbitral adjudication of federal statutory employment rights under the FAA . . . 'must be sufficient to ensure that arbitrators comply with the requirements of the statute' at issue." *Carter*, 189 F. Supp. 2d at 619 (quoting *Williams v. Cigna Fin. Advisors Inc.*, 197 F.3d 752, 761 (5th Cir. 1999)) (alterations in original).

Finally, the plaintiffs argue that enforcement of the agreement would result in oppression and unfair surprise because they were pressured to execute the online paperwork, that it was nonnegotiable, and that they were never told anything about the arbitration agreement, including that mandatory arbitration was a term and condition of employment. However, as Genghis Grill

observes, the first line of the arbitration agreement begins with the language, *"As a condition of employment* . . . the undersigned employee . . . and Genghis Grill voluntarily and knowingly enter into this Mutual Arbitration Agreement . . . ."  Document #27-1 at 6 (emphasis added).  Furthermore, although Texas law recognizes procedural unconscionability, "which refers to the circumstances surrounding the adoption of the arbitration provision," *In re Halliburton Co.*, 80 S.W.3d at 571, the plaintiffs offer no authority to support their argument that pressure to execute the online paperwork or the other surrounding circumstances might render the agreement unconscionable.  An employee's only briefly looking at an agreement and failing to read or understand it does not render the agreement unconscionable.  *Id.* at 568-69.  Nor is a disparity in bargaining power with no opportunity to negotiate sufficient to render an arbitration agreement unenforceable.  *Id.* at 572.  Here also the plaintiffs have failed to meet their burden of showing that the agreement is unconscionable.

## CONCLUSION

For the reasons explained above, Genghis Grill's motions to compel arbitration with Brandy Mitchell, Amanda King, and Chauncey Durham are GRANTED.  Documents #27 and #32.

IT IS SO ORDERED this 23rd day of July, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE